UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jabbar Straws, #231018, | ) | C/A No. 5:15-cv-03113-TMC-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| vs. | ) | |
| | ) | |
| Bryan Stirling, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is a civil action filed pro se by a state prison inmate. Pursuant to 28 U.S.C. § 636(b)(1), and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in such pro se cases and to submit findings and recommendations to the district court. *See* 28 U.S.C. §§ 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

I.    Factual Background

Jabbar Straws ("Plaintiff") is a state prisoner currently incarcerated at the Broad River Correctional Institution ("Broad River"), which is part of the South Carolina Department of Corrections ("SCDC") prison system. In his Complaint, Plaintiff sues the Director of SCDC, alleging denial of his due-process rights and that he is experiencing cruel and unusual punishment while housed at Broad River because he fears that he will become the victim of prison violence due to unsafe conditions of confinement. Compl. 3-4, ECF No. 1. Plaintiff alleges that he is suffering "mental trauma" and that he could experience "possible future harm physically and emotionally" as a result of the way corrections officers are trained to respond to violence at Broad River. *Id.* at 3. He

1

further alleges that "when violence erupts the officers run off the wing and leave [prisoners] to fend for [themselves]," and that there is no place for the inmates to go to escape the violence because they cannot "lock themselves in their cells" for safety. *Id*. Plaintiff alleges that SCDC's decision to change the locks on the cell doors has made his "living environment unsafe and . . . a breeding ground for future harm." *Id*. Plaintiff alleges that he has witnessed "blood shed" in "the last few months" and that "he suffers nightmares where he is next." *Id*. He asks this court to order SCDC, through Defendant, to replace the locks on the cell, hire more officers and train them better, and that "if any acts of violence happens to Plaintiff that he did not cause, he be compensated a reasonable amount." *Id*. at 5.

II.     Standard of Review

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's pro se Complaint filed in this case. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. §§ 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden*, *Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979).

Pro se complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *De'Lonta v. Angelone*, 330 F.3d 630, 630 n.1 (4th Cir. 2003). Nevertheless, the requirement of liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege

2

facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Even under this less stringent standard, the Complaint filed in this case is subject to summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B).

III.    Discussion

Plaintiff's Complaint should be summarily dismissed because it is clear from the face of the pleadings that Plaintiff did not exhaust his administrative remedies regarding his current claims before filing this lawsuit. *See* 42 U.S.C. § 1997(e); *Woodford v. Ngo*, 548 U.S. 81 (2006) (prisoners must "properly exhaust" their administrative remedies before coming into court); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (exhaustion applies to all kinds of "inmate suits about prison life . . . ."); *Booth v. Churner*, 532 U.S. 731 (2001) ("we think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures."). In his Complaint, Plaintiff responded "no" to this question: "Did you file a grievance concerning the claims you are raising in this matter." ECF No. 1 at 2. Following review of the Complaint, Plaintiff was given an opportunity to respond to the court's concerns about his exhaustion efforts through his Answers to the Court's Special Interrogatories. ECF No. 11. In those Answers, Plaintiff acknowledges that he did not pursue the prison administrative remedy process by filing a Step 1 grievance regarding any of the claims he seeks to raise in his Complaint. *Id*. By way of explanation for his failure to attempt to administratively exhaust his claims, Plaintiff states "[t]his is an emergency complaint. In dire need of a court order. A matter of life and death. Amendment 14." *Id*. at 2.

However, a number of courts have expressly refused to carve out an equitable or "emergency exception" to the exhaustion requirement applicable in prisoner litigation. *See, e.g.*,

3

*Horacek v. Caruso*, No. 1:08-cv-262, 2009 WL 125398, at *3 (W.D. Mich. Jan. 15, 2009) ("The Court is unaware of any [hardship or emergency] exceptions or authority supporting such."); *Sanders v. Norris*, No. 5:08CV00049, 2008 WL 2926198, at *2 n.8 (E.D. Ark. 2008) (an exception for urgent medical needs would defeat the purpose of the exhaustion requirement: to give officials the first opportunity to promptly remedy a situation within the prison system); *Rivera v. Pataki*, No. 01Civ.5179MBM, at **6-7, 2003 WL 21511939 (S.D.N.Y. July 1, 2003) (judicially crafting exceptions to the exhaustion requirement is inconsistent with Supreme Court precedent; claim that exhaustion requirement should be excused because of the inmate's severe medical condition lacked merit); Jason Weiss, *State Constitutional Law-Privacy-Washington Supreme Court Applies Wrong Standard in Determining If Inmate's Rights Were Violated by Prison's Force-Feeding Policy. Mcnabb v. Department of Corrections,* 40 Rutgers L.J. 1069, 1086 (2009) ("[M]any courts have held that there is no emergency exception to a prison's requirement to exhaust available remedies before following policies."); *see also Smith v. Thompson*, 638 F. Supp.2d 754, 757 (E.D. Ky. 2009) (the exhaustion requirement is mandatory and not subject to judge-made exceptions; "the exhaustion requirement cannot be circumvented by the simple expedient of requesting injunctive relief"); *cf. Rios v. Cate*, No. 10CV1064MMA(PCL), 2010 WL 2998791, at *2 (S.D. Cal. July 28, 2010) (party seeking a TRO cannot establish likelihood of success on the merits where a prerequisite to pursuing an action in federal court such as exhaustion of administrative remedies was not satisfied).

Additionally, the SCDC administrative remedy procedure has an entire section governing "emergency" situations and allowing prisoners to pursue true emergency grievances through a more "fast tracked" procedure. *See* SCDC Policy & Procedure # GA-01.12 *Inmate Grievance*

*System* § 14 (May 12, 2014).[1] However, it appears that Plaintiff did not make any attempt to pursue his allegedly "emergency" claims under the available administrative procedure. Because Plaintiff did not exhaust the claims he seeks to raise, this court need not consider whether his allegations present plausible claims for relief.

IV.     Recommendation

Accordingly, it is recommended that the district court dismiss the Complaint in this case *without prejudice*. *See Brown v. Briscoe*, 998 F.2d 201, 202-04 (4th Cir. 1993); *see also* 28

---

[1] The full text of that section of the SCDC inmate grievance procedure states:

> 14. EMERGENCY PROCEDURES:
> 14.1  An emergency will encompass, but is not limited to, situations, actions, or conditions in which any person's health, safety, or welfare is threatened or in serious danger. It is the responsibility of the grievant to demonstrate the factors creating the substantial risk of personal injury or other serious and irreparable harm. The IGC will fax, or scan and email a copy of the grievance to the Chief/Designee, Inmate Grievance Branch, to determine if a substantial risk or serious harm is present and warrants the grievance being processed as an "emergency."
> 14.2  Once it is determined that the grievance is an emergency, it will be forwarded immediately to the Warden if resolution of the issue(s) is within the Warden's capability to provide. The Warden will conduct whatever investigation is deemed necessary and will respond to the inmate within no more than seven (7) working days after receipt of the emergency grievance by the IGC. If an emergency grievance involves the safety of an inmate, the Warden will take immediate steps to implement the appropriate precautions or temporary actions without waiting for an investigation to be conducted.
> 14.3  If a grievance is determined to be an emergency grievance which is not within the Warden's capability to resolve, it will be faxed, or scanned and emailed without substantive review immediately to the Chief/designee, Inmate Grievance Branch, for review and forwarded to the responsible official. The responsible official will conduct an investigation and will respond to the inmate within seven (7) working days of receipt of the grievance by the IGC. The response will be faxed, or scanned and emailed by the Chief, Inmate Grievance Branch/Designee, to the IGC, who will deliver the response to the inmate and have him/her sign it acknowledging receipt.
> 14.4  If the grievance is not determined to be an emergency, the IGC will be notified, who will note in his/her response that the grievance was not deemed to be an emergency, and the grievance will then be routinely processed through the system as if it were a normal grievance.

U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

    IT IS SO RECOMMENDED.

October 20, 2015                                           Kaymani D. West
Florence, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 2317**
> **Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).